In re YOUNG.

(First Division.  Juneau.  July 30, 1917.)

No. 1629-A.

1. EJECTMENT ⬳122—RESTITUTION, WRIT OF.
    In the execution of a writ of ejectment against Jimmie Young, the United States marshal ejected one Jennie Young from the premises described in the writ. She filed a petition in the court, claiming title to the property in her own right, and alleged that she was the owner thereof, holding adversely to all the world, when ejected by the marshal. She prayed the court to issue a writ of restitution, commanding the marshal forthwith to restore her possession of the property. *Held*, the petitioner was not a party to the suit in which the writ of ejectment issued. This court has jurisdiction in a summary proceeding to award a writ of restitution in those cases where the officer, in the execution of a writ of ejectment issuing from this court, has taken the property of one not a party to the ejectment suit.

⬳See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. EJECTMENT ⚖︎122—RESTITUTION.

> It is a settled rule of practice that no tenant, who was in possession anterior to the commencement of an ejectment, can be dispossessed upon a judgment and writ of possession to which he was not a party. If an officer with a writ shall eject such a party, he will be restored by the court to the possession, on motion made for that purpose.

Jennie Young filed her petition herein, alleging that the United States marshal, in the execution of a writ of ejectment in cause No. 1181, entitled Lucy Lindeman v. Jimmie Young, had dispossessed her of some real estate of which she (petitioner herein) is, and was at the time of the commencement of said ejectment action, the owner, and of which, at said time, she was in the actual, open, and notorious possession, occupying and holding the same "in her own right, title, and interest, exclusively and independently of any other person or persons whatsoever, and adversely to all the world besides."

The prayer of her petition is that the court will issue a writ of restitution, commanding the marshal forthwith to restore to petitioner the possession of the said property, of which she has been deprived by him.

On the filing of said petition an order to show cause was issued, returnable on June 1, 1917. On said date said Lucy Lindeman, hereinafter denominated as respondent, filed her answer, entitled "Answer to Order to Show Cause," but reading as follows:

"Comes now Lucy Lindeman, by her attorneys, Messrs. Cheney & Ziegler, and, answering the petition of Jennie Young filed herein, alleges," etc.

In said answer it is alleged that petitioner is the wife of said Jimmie Young, and it is admitted that petitioner was not a formal party to said suit; but in that connection it is alleged that she had full notice and knowledge of said suit, was a witness at the trial thereof, and that she then swore that the property belonged to her said husband, and that, even if she were the owner of said property, yet, on account of the things aforesaid, she is estopped to complain that she was not a formal party.

Petitioner moved to strike various allegations of the said answer as being superfluous, redundant, immaterial, pleading of evidence, and the like.

Maltby & Hunt, for petitioner.

Cheney & Ziegler, of Juneau, for Lucy Lindeman.

JENNINGS, District Judge. The precise question before the court is as to whether or not that motion should be granted; but at the hearing (doubt having been expressed as to the jurisdiction of the court and as to the propriety of proceeding by independent petition) the arguments and briefs of counsel took a wide range, necessitating an examination by the court of the following questions: (1) Has this court jurisdiction in a summary proceeding to award a writ of restitution in those cases where the officer, in the execution of a writ of ejectment issuing from the said court, has taken the property of one not a party to the ejectment suit? (2) If so, then should the motion to strike from the answer in this case be allowed?

It would seem that the authorities abundantly establish principles and precedents which require that the first question should be answered in the affirmative.

In Newell on Ejectment, page 816, the author says:

"It is to be remarked that in an action of ejectment the court that renders the judgment exercises a species of equitable jurisdiction over the writ of possession, recalling it if justice requires, and sometimes, after it has been executed, awarding a writ of restitution. Where the party under his writ of habere facias possessionem had taken more land than was recovered, or disturbed the possession of a person not a party to the suit, the court would, in a summary manner, inquire into the facts, and award a writ of restitution. The current of authority in this country and in England seems to be that the right to award the writ of restitution in cases not falling within any express statute authorizing such writs, arises by equitable construction by the courts, to prevent wrong and injury to a party who has been wrongfully dispossessed of the premises. Upon an application for a writ of restitution, it is not demandable as a matter of right, but as a matter of justice only."

Also 2 Freeman on Executions (2d Ed.) p. 476, § 476, as follows:

"The sheriff, in executing a writ of possession, may turn out persons against whom his writ did not authorize him to act, or he may deliver possession of lands not embraced in the writ. In either of

these events, the person injured may apply to the court issuing the writ, and procure an order directing restitution to him of whatever has improperly been taken from him by the officer. Restitution will also be ordered after the judgment has been vacated or reversed, or after the writ or judgment has been vacated for fraud or irregularity. In Kentucky restitution was ordered in a case where no writ of possession had ever issued, the defendant having been induced by fraud and deceit to surrender lands to which the plaintiff was not entitled under the judgment. In replacing in possession persons whom the officer has removed under the writ, the rule of the courts is to proceed with great caution, and not to grant the relief sought unless the right to it appears substantially unquestionable. This rule is applicable whether the party applying for restitution claims that he was not a party whom the plaintiff was entitled to dispossess, or that the lands of which he was dispossessed were not embraced within the boundaries of the tract described in the writ."

## Also Sedgwick & Wait on Trial of Title to Land, § 575:

"A writ, or an order for restitution, will be granted in cases where the sheriff has delivered possession of lands not embraced in the writ, or has evicted parties who were not legally subject to the operation of the writ or bound by the judgment, or where the judgment in ejectment has been reversed on appeal, or vacated for irregularity, or a party has been turned out by mistake. But the sheriff has no authority, by virtue of a writ of restitution, to remove from the premises persons who were not parties to the judgment, and who did not enter under the defendant pending the suit. The party moving for a writ, or order of restitution, must make out a clear case, free from ambiguity, and restitution will be denied to a party who has been removed from possession, if he is without color of right to the possession. McQuade v. Emmons, 38 N. J. Law, 397."

## 9 R. C. L. p. 937, § 106:

"The current of authority in this country and in England seems to be that the right to award the writ of restitution, in cases not falling within any express statute authorizing such writs, arises by equitable construction by the courts, to prevent injury to a party who has been wrongfully dispossessed of the premises, and that the writ is not demandable as a matter of right, but as a matter of justice only, and will not be granted where there is any question as to the facts."

Also 15 Cyc. p. 194, note 38, note 46, and note 60.

Ex parte Reynolds, 1 Caines (N. Y.) 500, seems to be a leading case. The opinion is a short one, and is given in full as follows:

"This was an application for a writ of restitution. The facts are stated in the opinion of the court, which was delivered by—

"Spencer, J.  It appears by the affidavit of the deponent (and the allegation is uncontroverted) that in October last, upon a writ of habere facias possessionem, issued out of this court, in the case of John Jackson ex dem. Nicholas Low and others, the deponent was turned out of possession of a house and 50 acres of land, being part of lot No. 37, in Romulus, in the county of Cayuga; that the possession held by him was delivered by the agent of Mr. Low; that the deponent was, prior to the commencement of the ejectment against James Reynolds, in peaceable possession of the land from which he was expelled; that the object of the suit against James Reynolds was for the recovery of different lands which he held on another part of the lot; and that the two possessions were separate and distinct.

"It is a settled rule of practice that no tenant, who was in possession anterior to the commencement of an ejectment, can be dispossessed upon a judgment, and writ of possession, in which he is no party. It is the opinion of the court that Peter Reynolds is entitled to relief, and that a writ of restitution issue to reinstate him in the possession of the premises, from which he has been thus irregularly ousted.

"Restitution ordered."

While the facts are not the same as in the case at bar, yet the principle laid down is the same; that principle being that the party dispossessed by unlawful levy of an ejectment execution can proceed by affidavits to get restitution.

In Scott v. Newsom, 4 Sneed (36 Tenn.) 457, bottom paging, the court held that the person unlawfully dispossessed by the officer could not bring forcible entry and detainer, remarking, however, that:

"The plaintiff had an ample and summary remedy by petition to the court, setting forth the facts, and asking to be restored to the possession."

In South Beach Land Co. v. Christy, 41 Cal. 501, the holding is that:

"If a sheriff has wrongfully turned a person out of possession of land under a writ, * * * he will be restored by the court to the possession, on motion made for that purpose."

Here the court said:

"The proof shows satisfactorily that he [the mover] was in the actual possession at the commencement of the action."

In the case at bar no statement can be made as to what the proof will show, for the matter has not yet reached the point

of proof; but the case is an authority on what the law will be if the proof should show independent possession by Jennie Young at the time of the commencement of the action.

In the case of King v. Davis (C. C.) 137 Fed. on page 223, the court found as a fact that the property involved was the separate property of Mary Estep, and so not subject to process issued or to be issued in the action at hand to which she was not a party. Mary Estep had asked that the writ against her husband should be "so framed as not to interfere with her rights." The matter before the court was the consideration of the rights of a person not a party to a suit to protect his possession of land, which is the subject of that suit. That was the question there, and that is the question here. The court said:

"Where a petitioner not a party to the action is in possession, and would be disturbed therein illegally by the execution of a writ of possession, such person can surely reach the attention of the court at this stage of the proceeding. Even after execution of the writ of possession, the courts will issue writs of restitution, to restore possession to persons who have been put out of possession wrongfully. If any of the petitioners have a right to remain in possession, that right should not be disturbed. A petition showing the facts on which such claim of right rests, and praying that the right be safeguarded, is, I think, the best method of proceeding."

In that particular case the court thought that:

"The proper course is to open the judgment, allow her to plead to the declaration, and withhold the writ of possession against Elijah Estep quoad this tract of land."

In the case of Oetegen v. Ross, 47 Ill. 142, on page 147, 95 Am. Dec. 468, the court said:

"It is to be remarked that, in the action of ejectment, the court that renders the judgment exercises a species of equitable jurisdiction over the writ of possession, recalling it if justice requires, and sometimes, after it has been executed, awarding a writ of restitution. Coleman v. Henderson, 2 Scam. 251; Ex parte Reynolds, 1 Caines (N. Y.) 500; Jackson v. Hasbrouc, 5 J. R. 366; Doe ex dem. Troughton v. Roe, 4 Burr. 1996."

This case is cited, not because the facts are entirely analogous, but because of the principle it lays down as to the power of the court over its own process in ejectment suits.

Howard v. Kennedy's Ex'rs, 4 Ala. 592, 39 Am. Dec. 307, is to the effect that:

"Where it is shown to the court by affidavit that one having no privity with the defendant, but in possession anterior to the commencement of the action, is turned out by a writ of possession against another, a writ of restitution will issue to restore him to the possession from which he has been irregularly ousted. Ex parte Reynolds, 1 Caines [N. Y.] 500. And in Chiles v. Stephens, 1 A. K. Marsh. [Ky.] 333, it was determined that, if a man was turned out of possession by habere facias possessionem, who was neither party nor privy to the judgment, he may maintain a writ of forcible entry and detainer."

The principle there is the same as is contended for here. I think there is no doubt of the power of the court to prevent its process from being abused, by being made the instrument by which the person abusing it acquires an unwarranted and unconscionable advantage over innocent third persons, is unquestionable.

If the rightful owner and possessor of land has been dispossessed by an officer of the court acting under a writ of the court (as it is alleged was done in this case), how is the action of the officer to be characterized, except as "an abuse of process," and how is the position of the injured party any different from that of one whose property has been taken without due process of law, and that, too, by an officer of the law and the court? The injured party has never had his day in court, and yet by an oppressive execution of the process of the court his property has been taken from him, and he has been deprived of that vantage which the present possession of real property confers upon the possessor. As expressed in substance by one author, he is put in position where if he would recover his own—

"he must recover upon the strength of his own title, which it may be difficult or impossible to prove, and to become an actor, and assume the burden of a litigation, which, but for the loss of the possession, would have been cast upon his opponent. * * * His adversary has, by virtue of a judgment to which he was not a party, 'usurped his position,' and by gaining the possession acquired the important and substantial rights and advantages which the possession confers, and which belonged to him." Sedgwick & Wait, Trial of Title to Land, § 560.

Well might the court exclaim, as it did exclaim in Garrison v. Savignac, 25 Mo. 47, 69 Am. Dec. 448:

"Just think of it! A man, who has been in possession of his premises for six years; another, wishing to obtain possession of them, will not sue the actual occupant, but brings a suit against a stranger,

who never was in possession of the premises, who neither knows nor cares anything about them. Against such a defendant a judgment is a thing of course. A writ is afterwards sued out, and the real tenant, who is no party to the proceeding, and who may never have heard of it, is turned out of house and home without a moment's warning. The mere possession of land is frequently a matter of much importance, where there is to be litigation respecting its title, and by sanctioning this proceeding an opening will be made whereby one may obtain possession of land, his title to which he was unwilling to expose in a court of justice."

This exclamation assumes an extreme case, it is true; but the principle of the case bears out the contention of petitioner. Counsel for respondent fails to see where this case "has any application to a case where the ejectment action is brought against the actual occupant," and he says:

"The record in Lindeman v. Young showed that the ejectment action was brought against Jimmie Young, who was at the time in the actual possession of the premises, and with full knowledge on the part of Jennie Young, the petitioner."

These are, in the answer, alleged to be facts; but there is nothing in the petition to this effect, quite the contrary, and in passing on the question under consideration the allegations of the petition are to be taken as being true in fact. Evidence may show that the allegations of the answer are true, and that the allegations of the petition are false; but, if it should so show, the situation will be considered when the time arrives, but not now.

But, says counsel for respondent, petitioner is the wife of Jimmie Young, the defendant in the execution writ, and the writ directing the marshal to dispossess defendant authorizes him to dispossess all of defendant's family, and he cites the case of Johnson v. Fullerton, 44 Pa. 466.

As to the assertion that petitioner is the wife of defendant in the execution writ, it is sufficient to say that, if that relation does in fact obtain, there is nothing in the petition by which it is made to appear; and as to Johnson v. Fullerton it is sufficient to say that, if that case is to be taken as laying down a principle applicable under all circumstances, it seems to stand alone, has been much criticized, and is contrary both to reason and authority. Freeman on Executions, § 475; Sedgwick & Wait on Trial of Title to Land, §§ 559, 560.

The court thinks that there is not any doubt that, assuming

as true the allegations of the petition, it has jurisdiction to grant the writ asked for, nor any doubt that action of the court in the premises can be invoked by means of an independent petition, and, as the respondent has answered the petition on the merits, the court has jurisdiction of the parties.

Passing, then, to the precise matter before the court, to wit, the motion of petitioner to strike certain portions of the answer:

Petitioner moves that the following allegation of paragraph 5 of the answer be stricken as being irrelevant, redundant, superfluous, and argumentative, to wit:

" * * * But in this connection she avers that the said Jennie Young appeared and testified in the said suit of Lucy Lindeman against Jimmie Young, and that she testified under oath that Jimmie Young, her husband, was the owner of the property which constituted the subject-matter of said suit, and which is the same property the said Jennie Young is now claiming to be the owner of, all of which more fully appears by the transcription of the record matter in said cause by the official court reporter, to which record reference is hereby made."

The motion is granted as to that part reading as follows: "All of which more fully appears by the transcription of the record matter in said cause by the official court reporter, to which record reference is hereby made"—for that is the pleading of evidence pure and simple.

Petitioner also moves to strike out, for substantially the same reasons, all of paragraph No. 9 of the answer. The motion is granted to all that part of said paragraph from and including the word "that" in the first line on page 5 of the answer down to and including the last word of said paragraph. The relevancy or materiality of that is not apparent.

The remainder of said paragraphs 5 and 9 will be allowed to stand, because the granting of the writ of restitution seems not to be demandable as a matter of strict right, but to depend upon facts and circumstances showing a clear equity, and the court is not prepared to say at this time that the allegations thus allowed to stand do not negative the existence of the required equity.